Howard DERDIGER, on behalf of himself and all others similarly situated, Plaintiff,

v.

Joseph P. TALLMAN, John R. Durant, M.D., Kinney L. Johnson, Richard C. Miller, Frank G. Washington and HBO & Company, Defendants.

Civ.A. No. 17276.

Court of Chancery of Delaware, New Castle County.

Submitted: July 14, 2000.
Decided: July 20, 2000.

Ronald A. Brown, Jr., Prickett, Jones & Elliott, Wilmington; Arthur T. Susman, Charles R. Watkins, Robert J. Emanuel, Susman & Watkins, Chicago, Illinois, of counsel, for plaintiff.

David C. McBride, Martin S. Lessner, Young, Conaway, Stargatt & Taylor, LLP, Wilmington; James E. Nesland, Peter A. Gergely, Cooley Godward, LLP, Denver, Colorado, of counsel, for defendants Joseph P. Tallman, John R. Durant, M.D., Kinney L. Johnson, Richard C. Miller and Frank G. Washington.

Anthony W. Clark, Paul J. Lockwood, Stephen D. Dargitz, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington; Jonathan J. Lerner, Skadden, Arps, Slate, Meagher & Flom, LLP, New York City, James E. Lyons, Skadden, Arps, Slate, Meagher & Flom, LLP, San Francisco, California, of counsel, for defendant HBO & Company.

## OPINION

CHANDLER, Chancellor.

Plaintiff Howard Derdiger, a former stockholder of Access Health, Inc. ("Access" or the "Company"), purports to bring this action on behalf of himself and all other former Access stockholders, excluding defendants and their affiliates, who were entitled to vote on the December 10, 1998 merger between Access and defendant HBO & Company ("HBOC"). The five individual defendants, Joseph P. Tallman, John R. Durant, M.D., Kinney L. Johnson, Richard C. Miller, and Frank G. Washington, are former Access directors and constituted the Company's entire board of directors during the challenged events. The five individual defendants are sometimes referred to collectively as the "Access Directors".

Before the Access/HBOC merger, Access was a publicly traded Delaware corporation headquartered in Broomfield, Colorado and was principally engaged in providing health management products and services to the healthcare industry. Access is not named as a defendant in this action.

Defendant HBOC was and remains a Delaware corporation. At the time of the merger, HBOC was headquartered in Atlanta, Georgia. As explained in greater detail below, McKesson Corporation ("McKesson") acquired HBOC shortly after HBOC acquired Access. HBOC, now a wholly-owned subsidiary of McKesson, continues to engage in the business of providing software solutions and other technology related services to the healthcare industry.

Four motions are pending before the Court: two from Derdiger, one from the Access Directors, and one from HBOC. Derdiger seeks to certify the class described above pursuant to Court of Chancery Rule 23(a) and 23(b)(1) or (2). Derdiger also moves for partial summary judgment with respect to two of his three substantive claims.[1]

Derdiger's first count alleges that the Access Directors "breached their fiduciary duties, including their fiduciary duty of disclosure, to plaintiff and the Class" by disseminating materially incorrect proxy statements in connection with the Access/HBOC merger and the HBOC/McKesson merger. The second count alleges that HBOC aided and abetted the Access Directors' breach of fidu-

ciary duty to plaintiff and the class by knowingly and deliberately preparing and providing false financial information to Access and then participating in the dissemination of such false information to Access shareholders.

The Access Directors oppose Derdiger's partial summary judgment motion and have themselves affirmatively moved to dismiss his amended complaint. HBOC opposes Derdiger's class certification motion and also opposes his motion for partial summary judgment. In addition, HBOC affirmatively moves to stay this action in favor of an earlier filed action in the Federal District Court for the Northern District of California.[2] The Access Directors have indicated that they join HBOC's motion to stay.

For all the reasons set forth below, I decline to rule on either Derdiger's or the Access Directors' dispositive motions and instead grant HBOC's motion to stay this action in favor of the earlier filed California litigation.

## I.  BACKGROUND

On September 28, 1998, Access and HBOC announced that they had entered into a stock-for-stock merger agreement pursuant to which Access shareholders would exchange each Access common share for 1.45 shares of HBOC common stock. At the same time it was pursuing the merger with Access, HBOC also was seeking to sell itself to McKesson.[3] On October 18, 1999, approximately three weeks after HBOC and Access announced

---

1. Derdiger does not currently move for summary judgment with respect to Count III of his complaint, an equitable fraud claim against HBOC.

2. *See In re McKesson HBOC, Inc. Securities Litig.*, 97 F.Supp.2d 993 (N.D.Cal.1999), 99–20743 RMW.

3. McKesson is a Delaware corporation, headquartered in San Francisco, principally engaged in the business of healthcare supply management.

their merger, HBOC announced that McKesson would acquire HBOC in a stock-for-stock merger pursuant to which the parties would exchange each share of HBOC common stock (including those shares HBOC issued in the Access merger) for 0.37 of a share of McKesson. The combined company would be called McKesson HBOC.

The McKesson/HBOC merger left Access shareholders holding approximately 0.53 shares of McKesson HBOC for each share of Access they held before the Access/HBOC merger. Access shareholders voted on and approved the merger with HBOC on December 10, 1998. HBOC and McKesson shareholders voted on and approved their merger on January 12, 1999.[4]

Between April 28, 1999 and June 21, 1999, McKesson HBOC made a series of stunning announcements to the financial markets. These announcements indicated that its information technology subsidiary, formerly HBOC, had significantly overstated revenues, net income, earnings per share and other financial information for the three preceding financial years. McKesson HBOC's stock price fell precipitously in reaction to this announcement. McKesson HBOC shareholders experienced paper losses of almost $34 per share, or just over fifty percent, on the day of the first announcement.

During the time Access stockholders considered the pending stock-for-stock merger with HBOC, HBOC's overstated financial information was communicated to them in a November 6, 1999 proxy statement. Access's proxy statement included a prospectus, which HBOC prepared, describing the HBOC stock to be issued in the merger. This prospectus included HBOC historical financial data and pro forma financial data for a combined HBOC/Access. As noted, much of this financial information was incorrect. Identical incorrect information describing HBOC's historical financial performance was again communicated to Access shareholders on November 27, 1999, in a supplemental proxy disseminated in connection with the HBOC/McKesson merger.

Plaintiff contends that HBOC overstated its net income by $20.2 million in financial year '96/'97, $35.6 million in financial year '97/'98, and $123.3 million for the first six months of the '98/'99 financial year. The amended complaint sets forth the relevant data more fully in a table depicting claimed versus actual Access/HBOC pro forma net income for two and a half fiscal years as reported in the November proxy statements:

| TIME PERIOD | CLAIMED NET INCOME | ACTUAL NET INCOME | OVER–STATEMENT |
|---|---|---|---|
| Pro Forma HBOC/Access combined net income for 6 mos. ended Sept. 30, 1998 (i.e., 4/1/98–9/30/98) | $166.6 million | $43.3 million | $123.3 million |
| Pro Forma HBOC/Access combined net income for 12 mos. ended March 31, 1998 (i.e., 4/1/97–3/31/98) | $186.8 million | $151.2 million | $35.6 million |
| Pro Forma HBOC/Access combined net income for 12 mos. ended March 31, 1997 (i.e., 4/1/96–3/31/97) | $97.2 million | $77 million | $20.2 million |

4. On or about March 31, 1999, Access merged directly into HBOC. HBOC remains a wholly-owned subsidiary of McKesson HBOC and is now called the Information Technology Business.

Although the pro forma net income depicted in the above table is for a combined Access/HBOC, the vast majority was attributable to HBOC, a company with a pre-merger/pre-disclosure stock market capitalization of approximately $13 billion versus a $700 million market capitalization for Access. Moreover, it appears undisputed that all of the overstatements related to HBOC's portion of the combined net income figures.

Derdiger alleges that senior HBOC executives purposefully inflated its revenues in the following manner: 1) recording revenues from sales that were contingent and thus not yet properly recorded under GAAP;[5] 2) backdating contracts so that revenues could be falsely reported as having occurred in an earlier period; 3) recording total revenues expected under multi-year contracts in a single year; and 4) recording revenues from sales contracts when the purported purchaser had not even agreed to buy the product.

Derdiger further alleges that senior HBOC executives encouraged and participated in the improper revenue recognition. He contends they maintained secret computer files containing evidence of improperly recorded contracts. He also contends they attempted (unsuccessfully) to destroy such files to cover up their wrongful conduct.

The complaint alleges the following HBOC senior officers to have had direct involvement and actual knowledge of the improperly recognized revenue: Albert Bergonzi, president and co-chief operating officer; David Held, chief financial officer and controller; Jay Lapine, senior vice president, general counsel and assistant

secretary; and Michael Smeraski, senior vice president and head of enterprise sales. Shortly after McKesson HBOC commenced an internal investigation of the accounting procedures at its recently acquired subsidiary and also began issuing corrective disclosures, the McKesson HBOC board of directors terminated each of these individuals for cause.

## II. ANALYSIS

McKesson HBOC shareholders filed the first of many securities fraud class action lawsuits hours after McKesson HBOC issued its first corrective disclosure on April 28, 1999. In all, shareholders filed more than fifty class action lawsuits in the District Court for the Northern District of California, which that Court has since consolidated. The District Court consolidated these fifty or so separate actions after a highly contentious struggle amongst several plaintiffs law firms vying for the coveted position of lead plaintiff's counsel. I will refer to this consolidated action as the "California Class Action."[6]

On July 2, 1999, Derdiger filed this lawsuit in the Court of Chancery seeking redress for HBOC's allegedly false statements made in connection with the Access/HBOC merger. He was not the first former Access stockholder to do so. Almost two months earlier, on May 11, 1999, Sandra D. Uhl, another former Access stockholder, filed a securities fraud suit in California federal court on behalf of the former stockholders of Access against HBOC, McKesson HBOC and certain former HBOC executives. Uhl's lawsuit, in which several other former Ac-

---

5. According to the complaint, the contingencies were "hidden" in "side-letters" purposefully kept separate from the actual sales contracts.

6. *See* n. 2, *supra.*

cess stockholders later joined, asserted claims for alleged violations of Sections 11, 12(2) and 15 of the Securities Act based on the same allegedly false statements by HBOC that plaintiff Derdiger later challenged in this suit. Uhls' lawsuit has been consolidated into the California Class Action.

In accordance with the Private Securities Litigation Reform Act[7] ("PSLRA"), the California Court considered twelve separate motions for appointment of a lead plaintiff and lead counsel. Several of these motions sought lead plaintiff/counsel status on behalf of various subgroups of putative class members. One such motion, submitted by the Uhl plaintiffs (who claimed to have owned more than 11,000 shares of Access stock and suffered a loss of more than $1.2 million), sought appointment as lead plaintiff for a subgroup consisting of former Access stockholders who received HBOC stock in the Access/HBOC merger.[8]

On November 2, 1999, after extensive briefing and argument on the motions for appointment of lead plaintiff and lead counsel, the California Court entered an order consolidating all of the cases (except for one derivative suit) and denying the requests to appoint separate lead plaintiffs for subgroups. In its consolidation opinion and order, the Court concluded that "one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories."[9]

The Court also narrowed the candidates for consideration as lead plaintiff to two—

the New York City Pension Fund (the "NY City Fund") and the New York State Common Retirement Fund (the "NY State Fund"). Among other factors the Court considered, each of these institutional investors had held substantial amounts of Access stock—the N.Y. City Fund owned 73,796 Access shares, and the N.Y. State Fund owned 165,200 Access shares. After further briefing from these two parties, the California Court appointed the N.Y. State Fund as lead plaintiff, and its lawyers as lead counsel, for the entire class.

HBOC contends that because the earlier filed California Class Action derives from the same nucleus of facts as the Derdiger action, subsumes all of Derdiger's class action claims, and involves essentially the same parties, Derdiger's complaint should be stayed in favor of the California Class Action for reasons of comity and judicial efficiency.

*A. Standard Applicable to Defendants' Motion to Stay*

■ Defendants contend the Delaware Supreme Court's opinion in *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.*[10] governs the analysis of HBOC's motion. *McWane* and its progeny establish that although a stay is not granted as a matter of right solely by virtue of a prior-filed action in another forum involving the same parties and issues, Delaware courts may freely exercise discretion in circumstances where a first-filed action is capable of doing prompt and complete justice between the parties.[11]

---

7.  15 U.S.C. § 77z–1.

8.  Uhl's lawyers apparently attempted to aggregate a large group of former Access stockholders in order to be awarded the role of lead counsel under the applicable provisions of the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I)(bb).

9.  HBOC Ex. 1 at 5 (emphasis in original).

10.  Del.Supr., 263 A.2d 281 (1970).

11.  *Id.* at 283.

■ Despite the existence of Delaware case law applying the *McWane* analysis to class or derivative actions pending in different fora,[12] Derdiger contends that the *McWane* analysis does *not* apply to a request to stay different class actions filed by different named plaintiffs, at least prior to class certification. Derdiger cites *Jim Walter Corp. v. Allen*[13] and *Silverstein v. Warner Communications, Inc.*[14] in support of this view. In *Silverstein*, Chancellor Allen explained his reticence to apply the *McWane* analysis to uncertified class actions:

> I view these motions as presenting the question of whether the *Silverstein* action should be stayed in favor of the earlier filed New York action. The conventional answer to this question is yes, if that action is between the same parties, involving the same matter and capable of doing complete justice. *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Engineering Co.*, Del. Supr., 263 A.2d 281 (1970). Plainly the New York action is earlier filed and is capable of doing complete justice. Is it between the same parties?
>
> In *Jim Walter Corp. v. Allen,* Del.Ch., C.A. No. 10974, 1990 WL 3899, Allen C. (1990), this Court held that for stay purposes, actions purportedly brought as class actions on behalf of the same class ought not be treated as necessarily involving the same parties, at least until one or the other of the courts involved has certified the action pending before it as a class action. The certification of an action as a class action involves impor-

tant judicial determinations (*i.e.*, those reflected in Rule 23(a) and (b)), including the adequacy of representation. Once such a judicial determination has been made in an earlier filed action, a class member ought ordinarily be relegated to the procedural protection afforded by the certifying court (*e.g.*, to appear personally; to object to representation or to a proposed settlement, etc.). But before any court has passed upon the propriety or appropriateness of class action certification, each court before whom such an action is pending must exercise discretion on the question of whether an aggrieved individual should be precluded (as application of the *McWane* standard would tend to do) from litigating her claim, either individually or as a class representative.[15]

In *Silverstein* and *Jim Walter*, Chancellor Allen expressed legitimate reservations about relegating one purported class representative and his counsel to the sidelines while another purported class representative and his counsel took control of the litigation, merely because the second set was quicker to the courthouse. As I explain in greater detail below, that concern is not implicated in this case, because a court of competent jurisdiction has already determined that the California Class Action's lead plaintiff (and counsel) is the most adequate class representative and is capable of and motivated to bring all claims on behalf of all plaintiffs.

I do not view the cautions Chancellor Allen sounded in *Silverstein* and *Jim Walter* as an absolute, invariable bar to

---

12. *See Corwin v. Silverman*, Del.Ch., C.A. No. 16347, mem. op., 1999 WL 499456, Chandler, C. (1999); *Schnell v. Porta Systems Corp.*, Del.Ch., C.A. No. 12948, mem. op., 1994 WL 148276, Hartnett, V.C. (1994).

13. Del.Ch., C.A. No. 10974, mem. op., 1990 WL 3899, Allen C. (1990).

14. Del.Ch., C.A. No. 11285, mem. op., 1991 WL 12835, Allen, C. (1991).

15. *Silverstein*, mem. op. at 5–6, 1991 WL 12835 at *3.

*McWane's* application in the class action context. Rather, they quite properly require the Court to be sensitive to certain factors in class litigation that are not present otherwise; particularly, the adequacy of the purported class representative and his counsel. Whether or not these factors preclude a stay, however, depends on the circumstances in each case.

In this instance, I believe the policy considerations behind *Jim Walter* and *Silverstein* support the application of the *McWane* standard to this case. Chancellor Allen observed in *Silverstein* that a motion to stay one uncertified class action in favor of another would "tend implicitly to authorize one set of lawyers or the other to negotiate and present a proposed settlement (and relegate the other to the role of objector at the hearing on the fairness of any such settlement reached)."[16] Accordingly, Chancellor Allen stated that such motions should "be approached realistically" because attorneys jockeying for control of class litigation could use a stay motion effectively to displace the judicial review of the adequacy of the class representative that occurs when a class is certified.

As Chancellor Allen explained in *Silverstein*, the *McWane* analysis should not be applied mechanically prior to class certification because "the certification of an action as a class action involves important judicial determinations (i.e., those reflected in Rule 23(a) and (b)) including adequacy of the representation."[17] The *Silverstein* opinion further theorized that applying the *forum non conveniens* test to a stay motion before a class is certified would create an incentive for parties to bring forward a class certification motion promptly. While

such an incentive "may result in more class certification motions (and thus will not be costless), that result is precisely what the framers of the modern (federal) rules of civil procedure contemplate."[18]

One cannot reasonably quarrel with these concerns. Nonetheless, defendants have persuasively shown that certain legislative events have significantly reduced the basis for the concerns voiced in Chancellor Allen's 1991 opinion. Specifically, the 1995 Private Securities Litigation Reform Act, alluded to above, has meaningfully changed the procedural landscape. Now, under the PSLRA, a federal court must choose the most adequate lead plaintiff and lead counsel at the outset of the case, rather than through a motion for class certification.[19] Thus, had *Silverstein* been decided in the PSLRA context, the linchpin of the Court's reasoning would have been judicial selection of the lead plaintiff and lead counsel, not certification of the class. In other words, in the California Class Action, the District Court has already determined that the lead plaintiff and his lawyers are adequate class representatives.

As noted above, the District Court conducted a lengthy and thorough evaluation of the twelve candidates who chose to compete for the lead plaintiff position—and Derdiger and his lawyers did not—then appointed the N.Y. State Fund, which held significantly more Access shares than Mr. Derdiger, as the lead plaintiff and its lawyers as lead counsel. Thus, even applying the approach advanced by Chancellor Allen a decade ago in *Silverstein* and *Jim Walter*, I believe the *McWane* analysis

---

16. *Id.*, mem. op. at 4, 1991 WL 12835 at *2.

17. *Id.*, mem. op. at 5, 1991 WL 12835 at *3.

18. *Id.*, mem. op. at 6, 1991 WL 12835 at *3 (citing Rule 23(c)(1)).

19. *See* 15 U.S.C. § 77z–1(a)(3)(B).

remains applicable to defendants' motion to stay in this specific case.[20]

In addition to arguing that *McWane* is *per se* inapplicable to class action litigation, plaintiff also contends that the California Class Action cannot be considered a "prior" filed action because it involves different claims and different parties. That is, Derdiger argues that HBOC has not sufficiently established the elements warranting a stay under *McWane* and its progeny. I now turn to this argument.

### B. Prior Actions Are Pending In a Competent Court

Before Derdiger filed suit in the Court of Chancery, dozens of class actions had been filed in the California Court—including the Uhl case alluded to above. Plaintiff Uhl specifically brought her action on behalf of former Access stockholders for damages incurred as a result of HBOC's alleged misstatements in connection with the Access/HBOC merger. There have been extensive proceedings in the California Class Action including the appointment of a lead plaintiff and lead counsel and the filing of an exhaustive and skillfully drafted, sixteen count, 103 page consolidated amended complaint which, as explained be-low, seeks recovery for the same class Derdiger purports to represent here. Moreover, the California Court is competent to determine all issues of fact and law arising from the HBOC accounting irregularities; even those based on Delaware fiduciary duty law.[21]

### C. Same Parties
#### 1. Plaintiffs

Derdiger defines the class he purports to represent as "all owners of Access common stock who were entitled to vote on the [Access/HBOC merger] ...."[22] The California Class Action is brought on behalf of "all persons who acquired publicly traded securities of [HBOC] during the period from January 20, 1997 through January 12, 1999, *including all persons or entities who acquired HBOC common stock in exchange for shares of stock of certain companies acquired by HBOC pursuant to [HBOC registration statements] ....*"[23] These are the same shareholders. The shareholders entitled to vote on the Access/HBOC merger are the same people who received HBOC stock pursuant to an HBOC registration statement issued in connection with the Access/HBOC stock-for-stock merger.

---

**20.** Plaintiff also argues that *Dura Parms., Inc., v. Scandipharm, Inc.,* Del.Ch., 713 A.2d 925, 929 n. 1 (1998) militates against applying the *McWane* analysis to class actions. *Dura,* however, did not, and could not, establish any rule regarding representative actions because it was not a class or derivative suit. As an aside in a footnote, the Court stated that priority of filing should not be given decisive weight in class actions because "[o]ther factors bearing on the convenience of the parties and the interests of Delaware in resolving the dispute will be more important." *Id.* There, it seems the Court was only referring to the issues raised by Chancellor Allen in *Silverstein* and *Jim Walter,* addressed in the foregoing. Because the District Court has already selected "the most adequate plaintiff" pursuant to the PSLRA (*see* 15 U.S.C. § 77z–1(a)(3)(B)), the *Dura* Court's apparent concern about deferring to a stockholder plaintiff who most swiftly "raced" to the courthouse does not apply here.

**21.** *See Corwin,* mem. op. at 16, 1999 WL 499456 at *5, Chandler, C. (1999) ("Federal Courts have proven time and again their ability to apply and even extend Delaware law in appropriate ways."); *Schnell,* mem. op. at 12, 1994 WL 148276 at *5, Hartnett, V.C. (1994) ("[t]he New York federal court is capable of applying the Delaware law of fiduciary duty").

**22.** Am.Compl., ¶ 15.

**23.** HBOC Ex. 11 ¶ 1 (emphasis added).

In a futile effort to distinguish the two groups, Derdiger relies on *Malone v. Brincat*[24] and argues that the California class is the typical "purchaser" class, at issue in typical federal securities litigation, while the class he purports to represent is the distinct "holder" class. Under the facts of this case, Derdiger makes a distinction without difference.

The "holders" versus "purchasers" distinction implicated in *Malone* is unavailing to plaintiff here. The fraud-based claim in *Malone* was brought on behalf of stockholders "who did not sell and, therefore, would not implicate federal securities laws which relate to the purchase or sale of securities."[25] In contrast to the *Malone* plaintiffs, Derdiger's lawsuit is brought on behalf of Access stockholders who did sell their Access stock in exchange for HBOC stock. That is, both lawsuits are brought on behalf of all Access stockholders who were *both* entitled to vote on the merger (Derdiger action) and who, immediately thereafter, exchanged their Access shares for HBOC shares upon consummation of the Access/HBOC merger (the California Class Action). As noted above, there is complete identity between "holders" and "buyers/sellers."[26] These groups are one and the same and they are represented in California. This fact militates in favor of a stay.[27]

### 2. Defendants

Derdiger contends that inclusion of the Access Directors in his complaint sufficiently distinguishes this action from the California Class Action. I disagree. HBOC principally argues that under *McWane*, "[t]o grant a stay, it is not required that the parties ... in both actions be identical. Substantial or functional identity is sufficient."[28] This criterion is met here.

Plaintiff's repeated argument that the California Court cannot do "complete justice" absent assertion of a breach of fiduciary duty of disclosure claim against the former Access Directors simply rings hollow. In *Schnell*, this Court pointed out what should now be obvious to plaintiff. "Nor does there appear to be any reason why the ... directors cannot be named as defendant in the [California Class Action], if there is any truly viable claim against them."[29]

Derdiger and his counsel can press for the claims asserted against the Access Di-

---

24. Del.Supr., 722 A.2d 5, 12 (1998).

25. *Id.* at 13.

26. Stated simply, one cannot exchange what one does not hold and all holders exchanged their Access stock for HBOC stock (and shortly thereafter their HBOC stock for McKesson stock) in this transaction.

27. *See Schnell*, mem. op. at 11, 1994 WL 148276 at *5 (granting stay where the "class proposed in the New York Action would necessarily include the class contemplated in the Delaware Action. Because the plaintiffs in the first-filed New York action would encompass not only the named plaintiffs here, but also members of the proposed, but as yet uncertified class here, there is an identity of plaintiffs in both actions.").

28. *See, e.g., AT & T Corp. v. Prime Sec. Distribs., Inc.,* Del.Ch., C.A. No. 15177, mem. op. at 4, 1996 WL 633300 at *2, Jacobs, V.C. (1996). *See also Corwin,* mem. op. at 12 n. 13, 1999 WL 499456 at 4 n. 13 (absence of certain directors as defendants in prior pending action is immaterial, because *McWane* requires only substantially the same parties); *Schnell,* mem. op. at 14, 1994 WL 148276 at *5 (staying class action brought against directors in favor of prior action brought against some, but not all, of the same directors).

29. *Schnell,* mem. op. at 11, 1994 WL 148276 at *5.

rectors in this action also be asserted in the California Class Action. No one can doubt that the lead plaintiff there, the N.Y. State Fund (which owned over thirty times more Access stock than Derdiger), is highly motivated to pursue all worthwhile claims on behalf of the former Access stockholders. If Derdiger persuades the N.Y. State Fund that adding the Access Directors to the California litigation is worthwhile, the N.Y. State Fund may certainly do so.[30]

Moreover, a careful reading of Derdiger's complaint against the Access Directors reveals that his "meaningful difference between the parties" argument is a facade. In his motion for partial summary judgment, Derdiger all but concedes that he is in reality not even seeking money damages against the Access Directors— merely a liability finding that they breached some fiduciary duty, whatever there state of mind might have been, by disseminating a proxy statement that contained false information.[31] Derdiger then ex-

plains how he intends to apply that liability finding—and this time seek money damages—against HBOC for aiding and abetting the Access Directors' breach of duty. Frankly, Derdiger's protestations that complete justice cannot be had without the Access Directors ring hollow when the party he truly pursues is HBOC, a party being vigorously prosecuted in the California Class Action.

The California Class Action's amended complaint also exposes certain facts that sit oddly next to Derdiger's claims against the Access Directors. The California Class Action brings claims on behalf of former stockholders of seven different companies that HBOC acquired in stock-for-stock mergers during the two-year class period. Access happened to be the last of the seven companies so acquired.[32]

HBOC closed its acquisition of Imnet Systems, Inc., in a stock-for-stock merger, a mere forty days before closing the Access transaction. Yet lawsuits brought

---

**30.** Derdiger states that the District Court cannot assert personal jurisdiction over the Access Directors. He provides no reason, let alone authority, for this proposition. In response, HBOC observes that the California Court clearly has personal jurisdiction over the Access Directors for claims relating to proxy statement misdisclosures because many copies of the proxy statement were mailed to California stockholders. *See, e.g., Jordan v. Global Natural Resources, Inc.,* 564 F.Supp. 59, 69 (S.D.Ohio 1983) (British corporation that solicited proxies in Ohio subject to personal jurisdiction in Ohio for fraud relating to proxies). Sandra Uhl, the former Access stockholder who commenced a class action suit against HBOC before Derdiger brought this suit, resides in California, undoubtedly among many other former Access stockholders. *See also RMS Titanic, Inc. v. Geller,* 2000 WL 306997, at *4 (D.Conn. Jan.10, 2000) (faxing fraudulent statement into district sufficient to establish venue for securities fraud).

If Derdiger is correct that the District Court cannot assert personal jurisdiction over the

Access Directors or if the N.Y. State Fund rejects a proposal to add breach of fiduciary duty claims against the Access Directors, he still does not suffer any prejudice through a stay in this Court. If the Access Directors are *not named as defendants in the California Class Action* (for whatever reason), the California Class Action cannot preclude any future claims Derdiger might bring against them, even if they arise out of the same set of operative facts as the claims actually asserted in the California Class Action. In the event that Derdiger does not recover in California, he may then seek leave to vacate this Court's stay of the claims against the Access Directors.

**31.** In light of the provision in Access's certificate of incorporation that limits the liability of the directors in accordance with 8 *Del.C.* § 102(b)(7) (HBOC Ex. 13), these defendants likely will have no monetary liability for the claims pleaded in Derdiger's complaint.

**32.** See HBOC Ex. 11, ¶¶ 34 and 35 (pp. 12–17).

against the former directors of Imnet Systems, or the former directors of any of the other companies HBOC acquired in stock-for-stock mergers, are conspicuously absent from any court's docket despite the fact that the former shareholders of those companies could presumably allege the same claims that Derdiger brings here. The short answer to this curiosity, which I will explain in greater detail below, is that all the injuries allegedly suffered by this class of plaintiffs will be fully and adequately addressed in the California Class Action. Access and its shareholders are no differently situated than any of the former shareholders of the other six companies HBOC has acquired.

### D. Same Claims, Same Issues

■ The California Class Action and this case share the same core facts, legal claims, and alleged damages. Each complaint alleges that HBOC's disclosures were materially false and misleading because its financial results were later restated. As far as former Access shareholders are concerned, the recovery sought in both cases also is identical—damages measured by the difference in value between the Access stock they exchanged in the Access/HBOC merger and the HBOC and McKesson HBOC stock they received.[33]

Plaintiff's contention that the two cases *"do not"* arise from the same facts and circumstances is sophistry. Under plaintiff's theory,

> "[t]he fact or event giving rise to this action was the solicitation of proxies from existing Access stockholders to vote for the Merger between Access and HBOC. The events giving rise to the federal securities claims asserted in the California litigation had nothing to do with the solicitation of proxies from Access stockholders; those claims arose from an alleged fraud on the market which occurred over a period of about two years."[34]

The factual predicate to both fraud claims is a misstatement in a proxy statement/prospectus. I reject plaintiff's contention that the "operative" fact was the "solicitation" rather than the misstatement. Moreover, the California Class Action does in fact specifically raise claims based on the solicitation of proxies—under § 14(a) and Rule 14a–9 of the Exchange Act—from the Access stockholders in connection with the HBOC merger.[35]

Then–Vice Chancellor Hartnett rejected essentially the same theory that Derdiger offers to distinguish the claims and issues pending here from the claims and issues pending in the California Class Action. In *Schnell v. Porta Systems Corp.*, seven putative class actions for securities laws violations were consolidated in federal court in New York, each alleging that the defendants had made materially false and misleading statements about a company's profitability. Schnell filed an action in this Court based on the same allegedly misleading statements already challenged in the federal action, but alleging breach of fiduciary duty of disclosure and fraudulent misrepresentation rather than federal securities violations. The Court forcefully rejected Schnell's artificial distinction of

---

**33.** Derdiger purports to seek equitable remedies of rescission or the placement of Access assets in constructive trust. This Court is generally reluctant, though not automatically unwilling, to "unwind" a merger. To convince the Court to unwind two successive mergers is a proposition more cumbersome by an order of magnitude.

**34.** Derdiger's Ans.Br. at 25–26.

**35.** See HBOC Ex. 11, ¶¶ 34(g) and 108–114.

his state law misdisclosure claim from the earlier-filed federal misdisclosure claims:

> "Plaintiff argues that the claims in the two complaints differ in that the federal securities claims require different prima facie allegations than the state claims. Therefore, he concludes, the causes of action are different. It is clear, however, that while the claims in the two courts may be stated in different ways, they are actually the same claims and arise out of the same transactional facts." [36]

In staying the Delaware action, the Court applied the rule that "all claims arising from a common nucleus of operative facts ought to be brought in the same court at the same time whenever possible." [37] This goal is certainly achievable under the facts of this case.

Another case strikingly analogous to the pending action is *Corwin v. Silverman.*[38] *Corwin* involved claims arising out of Cendant Corporation's ("Cendant") announced restatement of financial results for previous business periods. After that announcement, stockholders brought securities fraud class action suits and a derivative suit in federal court in New Jersey. Two days after the New Jersey derivative suit was filed, another group of stockholders filed suit in the Court of Chancery, alleging that Cendant's board of directors had breached fiduciary duties by permitting the payment of lucrative severance packages to senior management who were allegedly responsible for the fraud. The Delaware complaint also alleged that the directors had committed waste by approv-

ing a merger with a $400 million termination fee, which Cendant allegedly was forced to pay because of the earnings restatement.

This Court stayed the Delaware action even though "some of the claims and parties in the [New Jersey derivative action] are not exactly the same as those in the Delaware action...." [39] In staying the Delaware action, the Court reasoned that there was no risk that less than complete justice would ensue because the claims in the earlier pending action "are broader in scope than those in this action." [40] Likewise here. The reasoning of *Schnell* and *Corwin* apply fully to this case. This case raises the same allegations as the California Class Action, but repackages them as Delaware fiduciary duty claims instead of securities law claims.

■ Finally, plaintiff makes a strange argument that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") *requires*[41] claims alleging breach of fiduciary duty under Delaware law in connection with a proxy statement misdisclosure to be brought in Delaware rather than federal court. Plaintiff does not cite any statutory provision in SLUSA to support this argument. Instead, he cites to legislative history of PSLRA, an entirely different statute enacted several years *earlier.* Derdiger does not explain how a congressional statement that predates SLUSA by several years could prospectively alter SLUSA so as to preclude the lead plaintiff in the California Class Action from adding a state law breach of fiduciary duty claim to its consolidated amended

---

**36.** *Schnell,* mem. op. at 10, 1994 WL 148276 at *4.

**37.** *Id.* (citing *Maldonado v. Flynn,* Del.Ch., 417 a.2d 378, 382–83 (1980)).

**38.** *See* n. 12, *supra.*

**39.** *Corwin,* mem. op. at 11, 1999 WL 499456 at *4.

**40.** *Id.*

**41.** Emphasis in plaintiff's letter to the Court dated July 12, 2000.

complaint. This argument is meritless. Nothing in SLUSA *requires* that all breach of fiduciary duty claims asserted in connection with an alleged proxy statement misdisclosure be brought in Delaware rather than federal court.

### III. CONCLUSION

Former Access stockholders possess excellent federal remedies for alleged misdisclosures in the proxy statements and prospectuses of November 6 and 27. The N.Y. State Fund is skillfully and vigorously pressing a host of federal and state claims on their behalf in California Federal Court. To the extent fiduciary duty claims against the Access Directors are viable or necessary (*i.e.*, not redundant or duplicative of claims already brought), the N.Y. State Fund can bring them in California. If as plaintiff contends, the California Court cannot obtain personal jurisdiction over the Access Directors—or the Access Directors are not named as defendants in California for any other reason—and he has not recovered in the California Class Action, he can then seek leave to vacate the stay imposed in this action.

Each of the four *McWane* factors is present here. To preserve the resources of the courts and the parties, avoid duplication of efforts, and also to avoid what I consider a palpable risk of inconsistent findings and results, this action will be stayed in favor of the earlier-filed California Class Action. To the extent that any of Derdiger's substantive allegations survive the resolution of the California Class Action, he may seek leave to vacate the stay now imposed.

An Order has been entered consistent with this decision.