**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 28, 2022
Date Decided: March 7, 2022

Raymond J. DiCamillo, Esquire
Kevin M. Gallagher, Esquire
Alexander M. Krischik, Esquire
Alena V. Smith, Esquire
Richards, Layton & Finger P.A.
920 North King Street
Wilmington, Delaware 19801

Gregory V. Varallo, Esquire
Daniel E. Meyer, Esquire
Bernstein Litowitz Berger
& Grossmann LLP
500 Delaware Avenue, Suite 901
Wilmington, Delaware 19801

RE:  *In re Lordstown Motors Corp. Stockholders Litigation*,
      CA. No. 2021-1066-LWW

Dear Counsel:

The defendants have moved to stay this putative class action pending the resolution of a federal securities class action. I decline to grant a stay. The *McWane* doctrine applies with less force in the context of representative litigation and is particularly inapt here. Although the federal action is first-filed and concerns and the same business combination, the parties, claims, and remedy sought are different.

Perhaps more importantly, this case raises emerging issues of Delaware law. Established doctrines of fiduciary duty law are, of course, far from novel. But this court has had occasion to apply these principles in the context of special purpose

acquisition companies and stockholder redemption rights just once—in a decision rendered two months ago. This court's essential role of providing guidance in developing areas of our law would be impaired if the court were to denude its jurisdiction because a federal securities action resting on similar facts was filed first.

## I.  RELEVANT BACKGROUND

On October 23, 2020, Lordstown Motors Corp. ("Legacy LMC") completed a business combination with special purpose acquisition company DiamondPeak Holding Corp. ("DiamondPeak," and, after the combination, "Lordstown").[1] Disclosures issued in connection with the transaction indicated that Lordstown would have a first-mover advantage in the burgeoning electric truck market and that Lordstown had a large and growing backlog of truck orders.[2] On March 12, 2021, an analyst report was published that purported to identify problems faced by Lordstown.[3] A drop in Lordstown's stock price followed.[4]

Litigation followed, to say the least.

---

[1] Verified Class Action Compl. ("Compl.") ¶¶ 6, 13 (Dkt. 1).

[2] *See id.* ¶¶ 5-6.

[3] *Id.* ¶¶ 102-03.

[4] *See* Defs.' Mot. to Stay Ex. A ("Securities Compl.") ¶¶ 20-29 (Dkt. 15).

Starting in March 2021, multiple federal securities class actions were filed in the United States District Court for the Northern District of Ohio.[5]  The cases were consolidated in June 2021 (the "Securities Action").[6]  The defendants named in the Securities Action complaint are Lordstown, the Lordstown subsidiary that is the continuation of Legacy LMC, certain of Lordstown and Legacy LMC's current and former officers, and Lordstown director David Hamamoto.[7]  The complaint asserts various violations of the Securities Act of 1933 and Securities Exchange Act of 1934.[8]  The claims are brought on behalf of a putative class of persons and entities who "(a) purchased or otherwise acquired [Lordstown's] Class A Common Stock . . . publicly traded warrants . . . or any publicly traded option to purchase or sell [Lordstown's] Class A Common Stock, from August 3, 2020, through July 2, 2021. . . and/or (b) held [Lordstown's] Class A Common Stock as of September 21, 2020."[9]

---

[5] Defs.' Mot. to Stay ¶ 10.

[6] *See In re Lordstown Motors Corp. Sec. Litig.*, No. 4:21-cv-00616 (PAG) (N.D. Ohio).

[7] Securities Compl. ¶¶ 51-57.  Specifically, that complaint names as defendants former Legacy LMC (and later Lordstown) officers Caimin Flannery, Darren Post, and Rich Schmidt, and Lordstown officer Shane Brown.  *Id.*; *see* Compl. ¶ 22.

[8] Securities Compl. ¶¶ 451-90.

[9] *Id.* ¶ 442.

Related derivative actions were also filed in the United States District Court for the District of Delaware,[10] the Northern District of Ohio,[11] and in this court.[12]

The present action (the "Action") was brought after two Lordstown (previously DiamondPeak) stockholders obtained documents pursuant to 8 *Del. C.* § 220.[13] Their class action complaints were filed in this court on December 8 and December 13, 2021 and have been consolidated.[14] The plaintiffs' claims are brought on behalf of a putative class of "all record and beneficial holders of [DiamondPeak] common stock who continuously held such stock between the [transaction's] Record Date of September 21, 2020 and the closing of the de-SPAC Acquisition on October 23, 2020."[15]

The plaintiffs' Verified Class Action Complaint (the "Complaint) advances one claim against Hamamoto and four other former members of the DiamondPeak Board[16] and another claim against the "Controller Defendants"—defined as

---

[10] *In re Lordstown Motors Corp. S'holder Deriv. Litig.*, No. 21-cv-00604 (D. Del.).

[11] *Thai v. Burns*, No. 4:21-cv-01267 (N.D. Ohio). That action has been stayed pending the resolution of the Securities Action. *See* Defs.' Mot. to Stay ¶ 16.

[12] *Cormier v. Burns*, C.A. No. 2021-1049-LWW (Del. Ch.).

[13] Compl. ¶¶ 15-16.

[14] *See* Dkt. 1; *Amin v. Hamamoto*, C.A. No. 2021-1085-LWW (Dkts. 1, 44).

[15] Compl. ¶ 148.

[16] *Id*. ¶¶ 21-26, 158-63. Those individuals are Mark Walsh, Andrew Richardson, Steven Hash, and Judith Hannaway.

Diamond Peak Sponsor LLC and two of the former directors.[17]   I previously

described those claims as follows:

> The plaintiff[s] assert[] that the directors of DiamondPeak
> breached their fiduciary duties by failing to disclose
> certain information about [Legacy LMC's] purchase
> orders and production timeline. The plaintiff[s] further
> allege[] that DiamondPeak's controlling stockholders
> acted to advance their own interests by pursuing the
> transaction with Legacy LMC to the detriment of minority
> stockholders. The putative class of then-DiamondPeak
> stockholders were purportedly harmed by not exercising
> their redemption rights.[18]

On January 10 and 18, 2022, the defendants filed one-page motions to dismiss

pursuant to Court of Chancery Rules 12(b)(6) and 23.1.[19]  On January 19, 2022, the

defendants filed a Motion to Stay this Action pending the resolution of the Securities

Action.[20]  I heard argument on the Motion to Stay on February 28, 2022.[21]

## II.    LEGAL ANALYSIS

The defendants seek to stay this Action pending the resolution of the

Securities Action, relying on *McWane Cast Iron Pipe Corp. v. McDowell Wellman*

---

[17] *Id.* ¶¶ 28, 164-71.

[18] *In re Lordstown Motors Corp. S'holders Litig.*, 2022 WL 601120, at *2 (Del. Ch. Feb. 28, 2022).

[19] Dkts. 11, 14.

[20] Dkt. 20.

[21] Dkt. 43.

*Engineering Corp.* and its progeny.[22]  Under the *McWane* doctrine, the court's discretion to grant a stay should be freely exercised where "there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues."[23]  "[T]hese concepts are impelled by considerations of comity and the necessities of an orderly and efficient administration of justice."[24]

The defendants contend that allowing the Action to proceed in parallel with the Securities Action would tax the resources of the court and the parties.  They further assert that the plaintiffs here seek to represent a subset of the stockholder class represented in the Securities Action and that the breach of fiduciary duty claims in this Action are premised upon the same statements alleged to be misleading in the Securities Action.[25]

In response, the plaintiffs note that the claims in this Action involve novel issues of Delaware law that are not implicated in the Securities Action.  They further argue that, regardless, none of the *McWane* factors support staying the Action.[26]

---

[22] 263 A.2d 281 (Del. 1970).

[23] *Id.* at 283.

[24] *Id.*

[25] *See* Defs.' Mot. to Stay ¶¶ 1, 21-22.

[26] *See* Pls.' Opp'n to Defs.' Mot. to Stay ("Pls.' Opp'n") ¶¶ 7-10 (Dkt. 34).

A *McWane* analysis is an imperfect method to guide my assessment of the defendants' motion.[27] "[T]his court has proceeded cautiously when facing the question of whether to defer to a first-filed representative action and has given much less weight to first-filed status than is required in the non-representative action context."[28] In the representative litigation setting, the court's "paramount interest" is to ensure that "stockholders receive 'fair and consistent enforcement of their rights under the law governing the corporation.'"[29]

Here, the fundamental question is whether this court's interest in resolving corporate governance issues under Delaware law prevails over considerations of comity and practicality. This Action concerns allegations that the defendants breached their fiduciary duties of loyalty and impaired the exercise of stockholders' redemption rights in the context of a de-SPAC transaction. Those claims raise "novel issues" akin to those that this court was presented with in a matter of first

---

[27] *Biondi v. Scrushy*, 820 A.2d 1148, 1150 (Del. Ch. 2003) (explaining that "the *McWane* doctrine does not apply with full force" in representative actions).

[28] *Id.* at 1159; Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 5.01 (2021) (observing that "the Court of Chancery tends to afford decidedly less deference" to the *McWane* factors when considering competing stockholder representative suits).

[29] *Brandin v. Deason*, 941 A.2d 1020, 1024 (Del. Ch. 2007) (quoting *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 953 (Del. Ch. 2007)).

impression earlier this year.[30]  The Court of Chancery has "long been chary" about deferring to a first-filed action pending elsewhere "when a case involves important questions of our law in an emerging area."[31]

None of the remaining factors appropriately considered under *McWane* outweigh that vital interest.  The parties in this Action and the Securities Action differ significantly.  Although these actions have facts in common, the issues presented are distinct.  And the claims brought here are not a simple repackaging of securities claims with a Delaware law label.

To start, the Securities Action names only one of the Action's defendants.  The defendants point to the overlap in defendants here and in the related derivative actions (though they do not seek a stay in deference to those cases) to support their position that this Action should not move forward.[32]  But—insofar as the derivative actions are even relevant to whether a stay in deference to the Securities Action is appropriate—those cases seek to recover on behalf of Lordstown while this action

---

[30] *See In re MultiPlan Corp. S'holders Litig.*, --- A.3d ---, 2022 WL 24060, at *1 (Del. Ch. Jan. 3, 2022) (stating that, until that decision, "Delaware courts ha[d] not previously had an opportunity to consider the application of our law in the SPAC context").

[31] *In re Topps*, 924 A.2d at 960; *see Brandin*, 941 A.2d at 1024-25 (finding that the presence of novel, complicated, and unsettled issues of Delaware law "strongly favor[ed]" denial of a motion to stay); *Ryan v. Gifford*, 918 A.2d 341, 349-50 (Del. Ch. 2007) (noting that Delaware courts have substantial interests in resolving cases "where the law is novel").

[32] *See* Defs.' Mot. to Stay ¶¶ 28-31.

is brought on behalf of a putative class of former DiamondPeak stockholders. It is not apparent to me why this court would stand down from hearing class action claims in deference to derivative actions that might themselves defer to prior-filed securities claims.

The putative class in the Securities Action is also not equivalent to the class the plaintiffs seek to represent in this Action. The class proposed in the Securities Action includes stockholders who "purchased" Lordstown publicly traded warrants, units, or options to purchase or sell Class A shares from August 3, 2020 through July 2, 2021 "and/or . . . held" Class A shares as of September 21, 2020.[33] This Action, by contrast, is brought on behalf of a putative class of stockholders who "continuously held" Lordstown common stock "between the Record Date of September 21, 2020 and the closing of the de-SPAC Acquisition on October 23, 2020."[34] Members of the stockholder class in this Action also fall within the Securities Action class (which is not unusual in parallel actions). But, as the plaintiffs point out, any recovery for the earlier investors included in the Securities

---

[33] Securities Compl. ¶ 442.

[34] Compl. ¶ 148.

Action class—who are the focus of this Action—could be affected by the breadth of that class period.[35]

The issues in the actions coincide insofar as the disclosures in DiamondPeak's proxy statement require examination. They are otherwise fundamentally different. The crux of the Securities Action rests on whether Lordstown's stock price was "artificially inflated" by false and misleading disclosures.[36] The plaintiffs' Complaint, by contrast, alleges that the defendants harmed the putative class members by impairing the informed exercise of their redemption rights to the defendants' benefit.[37] These are quintessential Delaware concerns—not, as the defendants argue, a rebranding of securities claims about material misstatements as fiduciary duty claims.

That reality renders the cases relied upon by the defendants inapposite. In *Derdiger v. Tallman*, a lead plaintiff in a consolidated federal securities action was appointed to "pursue *all* available causes of action against *all* possible defendants

---

[35] The plaintiffs also contend that the proposed Securities Action class is under-inclusive of the class here because it would not include investors who purchased shares before August 3, 2020. The Securities Action class, however, also includes investors who "held" Class A shares as of the September 21, 2020 record date—which is the beginning of the plaintiffs' proposed class. *Compare* Securities Compl. ¶ 442, *with* Compl. ¶ 148.

[36] *E.g.*, Securities Compl. ¶¶ 114, 246, 432.

[37] Compl. ¶¶ 161-63, 168-70.

under *all* available legal theories."[38] A class action complaint was subsequently filed in the Court of Chancery, "seeking redress for . . . allegedly false statements made in connection with [a] merger."[39] The court deferred to the federal action because the cases "share[d] the same core facts, legal claims, and alleged damages."[40]

In *Schnell v. Porta Systems Corp.*, a federal securities complaint alleged "that the defendants engaged in a conspiracy to conceal adverse material information, to defraud purchasers, and to maintain an artificially high market price" for a company's stock.[41] A class action complaint filed in Delaware three weeks later likewise alleged that the defendants "breached their fiduciary duties owed to the shareholders in that they made material misrepresentations and failed to correct those material misrepresentations with subsequent disclosures" and that those actions "amounted to fraud."[42] In staying the Delaware action, the court explained that "while the claims in the two courts may be stated in different ways, they [were] actually the same claims."[43]

---

[38] 773 A.2d 1005, 1010 (Del. Ch. 2000) (emphasis in original).

[39] *Id.* at 1009.

[40] *Id.* at 1016.

[41] 1994 WL 148276, at *4 (Del. Ch. Apr. 12, 1994).

[42] *Id.*

[43] *Id.*

In this instance, the distinction between the federal claims pleaded in the Securities Action and the plaintiffs' Delaware law fiduciary duty claims is not an "artificial" one.[44] Without considering the viability of the plaintiffs' claims, even a superficial review of the Complaint makes plain that the plaintiffs are pursuing more than a narrow disclosure claim.[45] The claims advanced "invoke[] both the duty of loyalty and disclosure duties implicating director loyalty."[46] They are not "redundant or duplicative of"[47] the first-filed securities claims.[48]

The gap between the claims here and those in the Securities Action widens when the potential remedies are considered. The defendants argue that any monetary damages that could be awarded in this Action would be addressed by the relief sought in the Securities Action. But the bases for measuring the relief (if any) would be entirely different. The Securities Action seeks to recover damages for losses allegedly caused by the decline in Lordstown's stock price from a class period high

---

[44] *Derdiger*, 773 A.2d at 1016-17 (describing the "forceful[] rejection" of an alleged distinction between state and federal "misdisclosure claims" in *Schnell v. Porta Systems Corp.*).

[45] *E.g.*, Compl. ¶¶ 97, 123-25; *see MultiPlan*, 2022 WL 24060, at *8.

[46] *MultiPlan*, 2022 WL 24060, at *8.

[47] *Derdiger*, 773 A.2d at 1018.

[48] It bears mentioning that the defendants have also moved to stay the *Cormier* action. *Cormier*, C.A. No. 2021-1049-LWW, Dkt. 13. This decision should not be viewed as determinative of that motion, which concerns a subsequently-filed derivative action. *See id.*

of $31.57.[49] The plaintiffs' attempted recovery in this Action, by contrast, could turn on the $10 redemption price (plus interest) relative to the value the class received in the de-SPAC transaction.[50]

## III.   CONCLUSION

Delaware has a substantial interest in addressing the issues presented by this case.   And there is limited overlap—in terms of the parties, issues, and potential remedies—between this Action and the Securities Action.   The defendants' Motion to Stay is denied.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[49] *See* Securities Compl. ¶ 434.

[50] *See* Compl. ¶ 147.