Salvatore M. CARAVETTA and Robert E. Van Metre, individually and on behalf of others similarly situated, Plaintiffs,

v.

McKESSON HBOC, INC., Charles W. McCall, Jay P. Gilbertson and Arthur Andersen, LLP, Defendants.

Civil Action Number 00C–04–214–WTQ.

Superior Court of Delaware. New Castle County.

Submitted: Aug. 16, 2000.

Argued: Aug. 21, 2000.

Decided: Sept. 7, 2000.

R. Bruce McNew, of Taylor & McNew LLP, Greenville, Delaware, and Sherrie R. Savett, Lawrence J. Lederer, (argued) and Lane L. Vines, of Berger & Montague, P.C., Philadelphia, Pennsylvania, for plaintiffs.

Anthony W. Clark, and Paul J. Lockwood, (argued) of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, for defendant McKesson HBOC, Inc.

Alan J. Stone, and Jessica Zeldin, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for defendant Charles W. McCall.

Lawrence C. Ashby, (argued) and Steven T. Margolin, of Ashby & Geddes, for defendant Arthur Andersen LLP.

## OPINION

HERLIHY, J.

Plaintiffs Salvatore M. Caravetta and Robert E. Van Metre have filed a class action suit for damages in this Court. The defendants in this action, McKesson HBOC, Inc., Charles W. McCall, Jay P. Gilbertson[1] and Arthur Andersen, LLP, are also defendants in a multitude of previously-filed class actions now consolidated in the United States District Court for the Northern District of California. Neither this case nor the one in California, however, have yet been certified as class actions. The defendants, other than Gilbertson, have moved to stay or dismiss this action in favor of and pending further action in the California case.

Unlike Rule 23 governing class actions in the Court of Chancery, this Court's class action rule is relatively recent having only been adopted in 1994.[2] The issue presented here is new to this Court. It is whether this action should be stayed even though the litigation in California has yet to be certified as a class action. This

Court determines that a stay of this action in favor of the earlier-filed action in California is warranted. Since a stay is being issued, there is no need now to rule on the motions to dismiss.

## FACTUAL BACKGROUND[3]

Plaintiff Caravetta was formerly a vice chairperson, board member and owner of 1,075,628 shares of U.S. Servis, Inc., a Delaware corporation. Plaintiff Van Metre was formerly an officer and shareholder of U.S. Servis. On October 1, 1998, U.S. Servis merged with HBO & Company [HBOC]. It registered the shares it issued for the merger with a registration statement and prospectus it filed with the Securities & Exchange Commission. As a result of the merger, U.S. Servis stockholders, including Caravetta and Van Metre, received 0.16265 shares of HBOC common stock in exchange for each share of U.S. Servis stock. Not long thereafter, HBOC itself was acquired by the McKesson Corporation to form McKesson HBOC, Inc.[4] It is also a Delaware corporation and on April 28, 1999, after both mergers were completed, McKesson HBOC disclosed that HBOC's previously-reported financial reports were incorrectly reported and would have to be restated downward. As a result of this announcement, the price of McKesson HBOC's stock dropped immediately and significantly.

McKesson HBOC then performed a further audit and discovered that the losses stemming from HBOC's inaccurate financial reports were greater than previously

---

1. Defendant Gilbertson has been served with the complaint but has yet to answer it.

2. Superior Court Civil Rule 23.

3. Much of the background comes from the plaintiffs' complaint which, for purposes of this motion, will be accepted as true. *Spence*

*v. Funk,* Del.Supr., 396 A.2d 967 (1978). Other portions of the background come from oral argument and other court opinions.

4. McKesson HBOC is primarily a drug wholesaling business.

reported. As a result, five of McKesson HBOC's senior officers were fired for cause, including a named defendant in this case, Charles McCall.[5] Ultimately McKesson HBOC announced $327.4 million in total revenue reversals or write offs for the three previous fiscal years. These revenue reversals were attributed to various accounting improprieties.

Caravetta and Van Metre are members of the class of individuals who acquired HBOC securities in exchange for their U.S. Servis securities. They have sued McKesson HBOC, Gilbertson and McCall in this Court alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act[6] claiming that each did not exercise due diligence and/or take reasonable care to ensure that the SEC filings, financial statements and press releases regarding HBOC were free from misstatement and omission. Ultimately, plaintiffs claim HBOC's public statements about financial results were materially false and misleading. They have sued Arthur Andersen claiming that it improperly audited HBOC's financial statements. They claim that if they had known that the financial reports in HBOC's registration statements were false, they would not have exchanged their U.S. Servis securities for HBOC securities.

The U.S. Servis/HBOC merger was not the only merger in which HBOC was involved. There were six others, some just before the HBOC/McKesson merger. As a result of those mergers and the later-

announced financial information, over 50 lawsuits have been filed, most class actions. The first-filed class action appears to have been filed April 30, 1999, two days after the initial financial bombshell. Most of the suits have been consolidated in an action pending in the U.S. District Court for the Northern District of California.[7] That consolidated action has not yet been certified as a class action.

The District Court in California, however, has been involved in important precertification litigation. Prior to certification in a securities case, federal law requires a federal court, at the outset, to choose the most adequate lead plaintiff and lead counsel.[8] The District Court has chosen such a lead plaintiff (and counsel). But, that plaintiff was not a U.S. Servis shareholder at the time of its merger with HBOC. In late February 2000, that lead plaintiff filed an amended complaint. Included in its amended claims was one on behalf of U.S. Servis shareholders (along with shareholders of other former corporations that merged with HBOC) who exchanged their stock for HBOC stock.[9]

The two named plaintiffs here are not plaintiffs in their own names in any of the consolidated actions in California. They filed their action here on April 26, 2000 about two months after the amended complaint was filed in California. Among the reasons stated at oral argument for not being named plaintiffs in California was that Caravetta was such a large U.S. Servis stockholder and received so many

---

**5.** The complaint alleges that the other individual defendant, Gilbertson, was the chief operating officer and the chief financial officer of HBOC. The complaint does not allege that Gilbertson was fired because of his actions.

**6.** 15 U.S.C.A. §§ 11k, 77*l*(a)(2) and 77*o*.

**7.** *Aronson v. McKesson HBOC, Inc., et al.,* D.C.N.D. Cal., No. C–99–20743–RMW, 79 F.Supp.2d 1146; now *In Re McKesson HBOC,*

*Inc. Securities Litigation,* U.S.D.C.N.D.Cal., No. C–99–20743–RMW.

**8.** Private Securities Litigation Reform Act, 15 U.S.C.A. § 77Z–1(a)(3)(B).

**9.** *In Re McKesson HBOC, Inc. Securities Litigation,* U.S.D.C.N.D. Cal., No. C–99–20743–RMW, amended complaint ¶ s 108, 109.

HBOC shares in exchange. The defendants whom they have sued here, however, are named defendants in the consolidated action in California. Those defendants now seek a stay of the action here in Delaware.

There are other defendants in the litigation in California. Some were sued in a class action in the Court of Chancery on behalf of shareholders of another corporation, Access Health, Inc., who consummated a stock-for-stock merger with HBOC. That action alleged breach of fiduciary duty. The Court of Chancery faced many of the issues raised here with some exceptions discussed below. It stayed the action filed in that court in favor of the action in California.[10]

## DISCUSSION

■■■ A motion to stay implicates the discretion of the Court.[11] The tests to be employed in exercising that discretion are long standing and were set out in *McWane Cast Iron Pipe Corp. v. McDowell, Wellman Eng'g. Co.*[12] That discretion

> should be exercised freely in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, in-

volving the some parties and the same issues; that, as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing; that these concepts are impelled by considerations of comity and the necessities of an orderly and efficient administration of justice.[13]

The *McWane* "first filed" analysis is not a bright-line rule to be applied mechanically.[14]

The plaintiffs do not dispute that the action in California was filed prior to the complaint here. The record available to this Court shows that the first complaint filed there was on April 30, 1999. About fifty or so complaints have been subsequently filed. The amended complaint filed by the District–Court–designated lead plaintiff was filed in February of this year. This action was filed several months later. It is not a case, therefore, of race to the courthouse where there may be an issue of what was the first-filed action.[15]

---

10. *Derdiger v. Tallman*, Del.Ch., 773 A.2d 1005 (2000).

11. *Dura Pharm. v. Scandipharm, Inc.*, Del.Ch., 713 A.2d 925, 928 (1998).

12. Del.Supr., 263 A.2d 281, 283 (1970).

13. *Id.*, at 283.

14. *Dura Pharm.*, 713 A.2d at 928.

15. Several cases have discussed what is a simultaneous filing. *See HFTP Investments, L.L.C. v. Ariad Pharm.*, Del.Ch., C.A.No. 17501, Jacobs, V.C. (December 9, 1999) (action treated as simultaneously filed when second action was filed thirteen minutes after the first); *Acierno v. New Castle County*, Del. Supr., 679 A.2d 455, 458 (1996) (approving

the Court of Chancery's actions in treating a stay as filed simultaneously when the race-to-the courthouse was won by minutes); *Texas Instruments, Inc. v. Cyrix Corp.*, Del.Ch., C.A.No. 13288, Jacobs, V.C., 1994 WL 96983 (March 22, 1994) (holding that in a race to the courthouse that is won by five hours, should not, without more, impose upon the defendant the significant burden of inconvenience and hardship that might result in a denial of a stay that would otherwise be granted); *In Re Chambers Development Co., Inc. Shareholders Litigation*, Del.Ch., C.A.No. 12508, Chandler, V.C., 1993 WL 179335 (May 20, 1993) (holding that when lawsuits were filed concerning Chambers restructuring between March 18 and the Delaware filing date of April 1, the suits were filed in the same general time period as to be considered con-

In addition, plaintiffs' counsel stated at oral argument that they intentionally chose not to file their action in California.

But, while agreeing that the California action was first filed, the parties thereafter diverge in their arguments. In this case, defendants contend that the first-filed California action and this action are virtually mirror images of one another. Based on that, they argue that this Court should stay this action in favor of the California case because the California District Court can do complete justice and the California actions have the same issues and arise out of the same basic set of facts. The consolidated California action seeks relief based on securities of HBOC and its financial representations and seeks relief on behalf of all persons or entities who acquired HBOC stock pursuant to or in reliance upon the HBOC registration statements. Similar claims are noted here, but, of course, just for U.S. Servis shareholders.

■ Thus, at first blush, it appears that the complaint should be stayed in favor of the California action. The plaintiffs, however, cite three main reasons why their case should not be stayed in favor of the California action. First, they argue that the *McWane* standard should not be followed where, as here, no class has been certified in the California litigation. Second, they contend that their case states different claims than does the California action. Third, they assert that the lead plaintiff in the California action was not a U.S. Servis shareholder and, therefore, may not have standing to raise a claim on behalf of U.S. Servis shareholders.

In making their first argument that the *McWane* standards should not be applied here, since there has been no class certification in the California litigation, the plaintiffs rely upon two Court of Chancery opinions.[16] In *Jim Walter Corp*, the action was for declaratory judgment and there was an earlier-filed action in Texas. The Texas action was a putative class action but it had not been certified as a class action. Chancery did not stay the Delaware action because until class certification, there was no assurance that the Delaware plaintiffs would be part of any class. In *Silverstein*, Chancery again declined to stay a putative class action filed here in favor of an earlier-filed putative class action in New York. Again, the court was concerned, among other reasons, that, absent a class certification in the prior-filed action, there was no assurance that the Delaware plaintiffs would be able to present their claims.

These concerns were addressed in *Derdiger v. Tallman*,[17] the class action brought on behalf of Access Health's shareholders alleging HBOC wrongdoing. In that case, the plaintiff's action was for breach of fiduciary duty against various defendants, including former directors of this corporation, Access Health. The plaintiff had been a stockholder in Access Health, which was merged with HBOC on a stock-for-stock basis. The action was filed also on behalf of all other former Access Health stockholders. Prior to taking action on the class action issue, the defendants, which included HBOC, moved

---

temporaneous for purposes of evaluation under the *Cryo–Maid* factors); *but see Dura Pharm.*, 713 A.2d at 929 (holding that a one day reactionary delay in filing a suit in Delaware is not enough to be considered a simultaneous filing).

**16.** *Jim Walter Corp. v. Allen*, Del.Ch., C.A.No. 10974, Allen, C., 1990 WL 3899 (January 12, 1990); *Silverstein v. Warner Communications, Inc.*, Del.Ch., C.A.No. 11285, Allen, C., 1991 WL 12835 (February 5, 1991).

**17.** Del.Ch., C.A.No. 17276, Chandler, C. (July 20, 2000).

to stay the Delaware case in favor of the same California action as is involved here.

In addressing the various concerns in *Jim Walter* and *Silverstein*, the Court said

I do not view the cautions [the court] sounded in *Silverstein* and *Jim Walter* as an absolute, invariable bar to *McWane's* application in the class action context. Rather, they quite properly require the Court to be sensitive to certain factors in class litigation that are not present otherwise; particularly, the adequacy of the purported class representative and his counsel. Whether or not these factors preclude a stay, however, depends on the circumstances in each case.

In this instance, I believe the policy considerations behind *Jim Walter* and *Silverstein* support the application of the *McWane* standard to this case. [The court] observed in *Silverstein* that a motion to stay one uncertified class action in favor of another would "tend implicitly to authorize one set of lawyers or the other to negotiate and present a proposed settlement (and relegate the other to the role of objector at the hearing on the fairness of any such settlement reached)." Accordingly, [the court] stated that such motions should "be approached realistically" because attorneys jockeying for control of class litigation could use a stay motion effectively to displace the judicial review of the adequacy of the class representative that occurs when a class is certified.

As [the court] explained in *Silverstein*, the *McWane* analysis should not be applied mechanically prior to class certification because "the certification of a action as a class action involves important judicial determinations (i.e., those reflected in Rule 23(a) and (b)) including

adequacy of the representation. The *Silverstein* opinion further theorized that applying the *forum non conveniens* test to a stay motion before a class is certified would create an incentive for parties to bring forward a class certification motion promptly. While such an incentive "may result in more class certification motions (and thus will not be costless), that result is precisely what the framers of the modern (federal) rules of civil procedure contemplate."

One cannot reasonably quarrel with these concerns. Nonetheless, defendants have persuasively shown that certain legislative events have significantly reduced the basis for the concerns voiced in [the court]'s 1991 opinion. Specifically, the 1995 Private Securities Litigation Reform Act, alluded to above, has meaningfully changed the procedural landscape. Now, under the PSLRA, a federal court must choose the most adequate lead plaintiff and lead counsel at the outset of the case, rather than through a motion for class certification. Thus, had *Silverstein* been decided in the PSLRA context, the linchpin of the Court's reasoning would have been judicial selection of the lead plaintiff and lead counsel, not certification of the class. In other words, in the California Class Action, the District Court has already determined that the lead plaintiff and his lawyers are adequate class representatives.[18]

After addressing the earlier concerns in *Jim Walter* and *Silverstein*, the Court of Chancery held the *McWane* analysis was applicable.[19] Applying that analysis, it stayed the Delaware case. This Court finds the Court of Chancery's approach to those concerns to be persuasive and also

---

**18.** *Id.* at 1011–12 [citations omitted].

**19.** *Id.* at 1012–13.

agrees that the *McWane* standards should be utilized in this case. Therefore, these plaintiffs will not avoid a stay merely because the California litigation has not been certified as a class action.

Plaintiffs in this case, however, point to certain differences between this case and *Derdiger*. The lead plaintiff selected in the California action was a stockholder in Access Health. It even owned more shares than Derdiger. But, that lead plaintiff did not own any U.S. Servis shares. As will be discussed more in detail below, while that is an important distinction, it does result in denying the motion for a stay.

The reason is that, for the moment, the lead plaintiff in the California action is capable of presenting these plaintiffs' claims, and those of any putative class with them, as part of the action in California. The record shows that in the amended complaint filed in February, the lead plaintiff has presented claims on behalf of U.S. Servis shareholders who exchanged their shares for HBOC stock. In addition, there are six other companies which merged with HBOC besides U.S. Servis whose shareholders appear to have suffered fates similar to U.S. Servis' shareholders. In fact, the amended complaint states that:

> Lead Plaintiff brings this action on behalf of all persons and entitles who acquired publicly traded securities of [HBOC] during the period from January 20, 1997 through January 12, 1999, including all persons or entities who acquired HBOC common stock in exchange for shares of stock of certain companies acquired by HBOC pursuant to the HBOC Registrations Statements, ... and who were injured thereby; [and] all persons ... who acquired ...

McKesson HBOC ..., including all persons ... who acquired McKesson HBOC common stock in exchange for shares of HBOC common stock pursuant to McKesson Registration Statement ..., and who were injured thereby; [20]

Even though the lead plaintiff has filed that amended complaint, the plaintiffs' second reason for opposing a stay is that their causes of action differ from the causes employed in the amended complaint. They contend their action implicates negligence and strict liability actions under the federal Securities Act.[21] The California action, on the other hand, they say, has causes of action containing fraud allegations which demand higher standards of pleading and proof. There are other causes of action pled in the amended complaint not present here. In short, the two cases are so different, they assert, there should be no stay.

The Court in *Derdiger* rejected a similar argument. The cause of action in Delaware was for breach of fiduciary duty, clearly an action within the historic purview of the Court of Chancery. That specific cause had not been alleged in the California cases by former Access Health shareholders. Even so, the Court of Chancery was unpersuaded that such difference should prevent a stay.

One concern in *Derdiger*, not present here, was whether the California District Court could obtain jurisdiction over some of the Access Health directors who were among the defendants sued in Delaware. The Court of Chancery held open the possibility that if jurisdiction over them could not be obtained, Derdiger could seek to lift the stay and renew his claim against those defendants. In this case, however, the District Court has apparently already

---

**20.** Amended Complaint at ¶ 1.

**21.** 15 U.S.C.A. § 77a.

obtained jurisdiction over all of the defendants named in this action, including Gilbertson. They are defendants there already in one or more of the consolidated actions. They are specifically named as defendants in the amended complaint and the plaintiffs here did not say there is a jurisdictional problem in the California litigation involving them.[22] If jurisdiction of the defendants in this action causes these plaintiffs to be unable to maintain a cause of action against them, that would be a basis for lifting the stay.

As in *Derdiger*, the cause of action here and the California litigation involve the same basic facts, legal claims and alleged damages.[23] Whatever packaging these plaintiffs use, that identity remains. Further, these plaintiffs have not shown that the causes of action they employ here cannot be plead or raised in the California case.

The plaintiff in *Derdiger* sought an interlocutory appeal of Chancery's grant of the stay which the Chancellor has refused to certify.[24] In refusing to certify the application, the Chancellor made an observation equally pertinent to this case:

Forcing the litigation to go forward in [the Court of Chancery] surely will have one consequence: it will mean that a Federal District Court in California with jurisdiction over a multitude of lawsuits all arising out of the same basic facts and transactions potentially could be on a collision course with [the Court of Chancery] in a lawsuit that involves only one limited aspect of the claims arising out of those transactions and facts. Unlike this action, the Federal District Court in California has already proceeding through a highly-contentious battle over selection of lead plaintiffs and lead counsel in what will surely be a mammoth class action lawsuit. Having reviewed the meticulously detailed, carefully crafted class action complaint filed in the California Federal District Court, I think it is undeniable that allowing this lawsuit to proceed parallel to the federal lawsuit in California is akin to allowing the tail to wag the dog.[25]

On August 29, 2000, the Supreme Court denied *Derdiger's* application for an interlocutory appeal. In its denial, the Supreme Court said:

We have examined the Court of Chancery's July 20, 2000 decision according to the criteria set forth in Rule 42. We agree with the Court of Chancery's analysis of August 14, 2000 in refusing to certify this interlocutory appeal. In the exercise of its discretion, this Court has concluded that exceptional circumstances do not exist in this case to merit interlocutory review of the decision of the Court of Chancery.[26]

The action in this Court and the consolidated California action are for recovery under the federal Securities Act, and it appears that the facts of the two claims are virtually identical. In fact, it appears that the California action is much more comprehensive. Additionally, the California Federal Court can provide prompt and fair justice. The California Federal Court is well suited, if not better suited, to hear claims of federal securities law violations. Any argument that there is a meaningful difference between the two actions is a

22. *Id.* at ¶s 17, 18a, 18c and 21.

23. *Derdiger, supra,* at 1016.

24. *Derdiger v. Tallman,* Del.Ch., C.A.No. 17276, Chandler, C. (August 14, 2000).

25. *Id.* at 8.

26. *Derdiger v. Tallman,* Del.Supr., No. 395,-2000, Holland, J., 2000 WL 1589929 (August 29, 2000) (ORDER).

mere facade.[27] Indeed, any differences in the two suits are minimum at best. Therefore, the Court will not keep the Delaware action pending because of a few trifling differences in the form of the two complaints.

The plaintiffs' third argument in opposition to the motion for a stay is that the lead plaintiff the California action was not a U.S. Servis shareholder and may not have standing to bring the claims of such shareholders in California. The assertion that the named plaintiff is not a member of the class he or she seeks to represent, in the context of standing issues, is another way of saying that the class representative lacks individual standing to raise issues common to the class.[28] However, the presence of individual standing is sufficient to confer the right to assert issues that are common to the class, speaking from the perspective of any standing requirements.[29] With respect to multiple claims alleged on behalf of a class, the representative must possess the same interest and suffer the same generic type of injury as the other class members, but the representative's injury need not necessarily arise from or be encompassed in the identical factual circumstances that give rise to the injuries of the class members.[30]

While it is true that a person cannot predicate standing on an injury he or she does not share,[31] that concern is not implicated here. The California suit and the Delaware suit are both predicated on the interest of entities who acquired or exchanged HBOC stock pursuant to or in reliance upon the inaccurate registration statement. While the shareholders of the different companies are admittedly not the same, the injuries suffered by the class members are virtually identical. The plaintiffs' contention, therefore, that the lead plaintiff in the California action did not swap any U.S. Servis securities (which, under the current record, appears true), must fail because the California plaintiffs suffered the same injury as a result of the financial misrepresentations in the registration statements. The California action is on behalf of shareholders of seven different companies that were involved in stock-for-stock mergers that were affected by the registration statement and certainly the California lead plaintiff suffered the same generic injury as the other potential class members.[32] Thus, it appears that the California lead plaintiff has standing to bring the claims on behalf of the Delaware plaintiffs.[33]

In sum, it appears that the California action and this action share the same factual background, virtually the same legal claims and seek damages stemming from the same alleged wrong, that the HBOC disclosures were false and misleading. Simply, this Delaware action is duplicative of the California class action already filed. The plaintiffs have not demonstrated any reason why the *McWane* test should not

27. *Derdiger, supra,* (August 14, 2000) at 21.

28. Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 3.19, 3–114 (3d ed.1992).

29. *Id.* § 2.05, 2–29.

30. *Id.* at § 3.17, 3–98.

31. *Allee v. Medrano,* 416 U.S. 802, 828, 94 S.Ct. 2191, 2207, 40 L.Ed.2d 566, 588 (1974).

32. Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 3.17, 3–98 (3d ed 1992).

33. If, in fact, the California Court decides that the lead plaintiff has standing to raise some issues but not others, the Court can dismiss those counts of the complaint for which the plaintiff lacks standing, or an alternative representative may be appointed for the issues on which the named plaintiff lacks standing. Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 3.19, 3–116–17 (3d ed.1992).

control and the case should not be stayed. As in *Derdiger*, should it appear that the lead plaintiff in the California action choose not to present or is unable to present the claims of U.S. Servis shareholders, these plaintiffs are entitled to seek leave of this Court to lift the stay.[34]

Anticipating the grant of a stay, the plaintiffs seek alternatively a determinate stay. That would be a stay until the earlier of the resolution of motions to dismiss or class certification in the California action. The Court views such a stay to be more cumbersome and one encompassing events unlikely to prompt a lifting of the stay.

Since the Court has granted the defendants' motions for a stay, it is unnecessary to address their motions to dismiss.

### CONCLUSION

For the reasons stated herein, the motions for stay of defendants McKesson HBOC, Inc., Charles W. McCall and Arthur Andersen, LLP, are GRANTED. Accordingly, the motions to dismiss of defendants McKesson HBOC, Inc., Charles W. McCall and Arthur Andersen, LLP, are **MOOT**.

IT IS SO ORDERED.

---

34. *Derdiger, supra,* at 1015, n. 30.