**In re NYFIX, INC. DERIVATIVE LITIGATION.**

**Master File No. 3:06cv01320 (AWT).**

United States District Court,
D. Connecticut.

July 25, 2008.

Aelish M. Baig, Shawn A. Williams, Coughlin Stoia Geller Rudman & Robbins, San Francisco, CA, Nancy A. Kulesa, Izard Nobel, LLP, Hartford, CT, Stephanie A. McLaughlin, Peter M. Nolin, Sandak Hennessey & Greco, Stamford, CT, for Plaintiff.

Michael D. Blanchard, Bingham McCutchen–State St. Htfd., Hartford, CT, Michael J. Chepiga, Robert Jerrod Pfister, Simpson, Thacher & Bartlett, New York, NY, Tristan Scott Cowperthwait, James T. Shearin, Pullman & Comley, Bridgeport, CT, Michael D. Kibler, Simpson Thatcher & Bartlett, Los Angeles, CA, Frank J. Silvestri, Jr., Brian E. Spears, Levett Rockwood, Westport, CT, for Defendant.

### RULING ON MOTIONS TO DISMISS

ALVIN W. THOMPSON, District Judge.

The plaintiffs, Andrew Brock ("Brock") and James Cattelona ("Cattelona"), on behalf on nominal defendant NYFIX, Inc. ("NYFIX"), bring this shareholder derivative action against certain of NYFIX's current and former officers and directors. Defendants NYFIX, George Deehan, William Lynch, William Jennings, Peter Hansen, and Thomas Wajnert have moved to dismiss this action. For the reasons set forth below, their motions to dismiss are being granted.

### I. BACKGROUND

On December 19, 2006, the plaintiffs filed a Consolidated Amended Verified Shareholder Derivative Complaint (the "First Amended Complaint"), alleging violations of federal and Connecticut law in connection with the defendants' backdating of stock option grants for the benefit of certain of NYFIX's directors and executive officers. The plaintiffs challenged nine specific stock option grants during the period of January 3, 1997 through March 21, 2003.

On January 22, 2007, NYFIX moved to dismiss the First Amended Complaint. After that motion had been fully briefed, the parties were notified that the plaintiffs had not submitted a verified complaint as required by Fed.R.Civ.P. 23.1 and had not specified whether they owned NYFIX stock at the time of the challenged transactions. The plaintiffs were given the option of submitting additional briefing on these issues or filing an amended complaint.

■ On June 27, 2007, the plaintiffs filed a Corrected First Amended Consolidated Verified Shareholder Derivative Complaint, followed by a supplement to that complaint (collectively, the "Second Amended Complaint"). In the Second Amended Complaint, the plaintiffs alleged, *inter alia,* that NYFIX filed a false and misleading Form 10–K on June 30, 2005, which diminished the overall impact of the defendants' backdating of stock option grants. The Second Amended Complaint alleges that Brock purchased 5,000 shares of NYFIX stock on February 18, 2005 and has held those shares continuously since then. It also alleges that Cattelona purchased 2,000 shares of NYFIX stock in July of 2005 and has held those shares continuously since then.[1]

---

1. In addition to alleging that the defendants filed a false and misleading Form 10–K on June 30, 2005, the plaintiffs allege that, from 1997 to 2003, the defendants engaged in a scheme to backdate stock option grants. However, the plaintiffs lack standing to assert these claims because they did not own NYFIX stock before 2005. *See* Part II.A., *infra.*

In connection with the Second Amended Complaint, the plaintiffs voluntarily dismissed defendants Richard Castillo, Robert Gasser, Lars Kragh, Richard Roberts, Lou Gorman,

On September 10, 2007, the court ordered the parties to brief the issue of whether the filing of the Second Amended Complaint triggered a new obligation on the part of the plaintiffs to make demand upon the directors of NYFIX pursuant to Fed.R.Civ.P. 23.1. On December 6, 2007, the court informed the parties that it had concluded that a new obligation to make demand was triggered by the filing of the Second Amended Complaint and directed the parties to brief the issue of whether the plaintiffs have sufficiently alleged that demand should be excused.

## II. DISCUSSION

### A. *The Proper Board for Assessing Futility of Demand*

■ The threshold issue presented by the instant motions to dismiss is whether the plaintiffs were required to make a new demand upon the NYFIX board of directors in connection with their filing of the Second Amended Complaint. In *Braddock v. Zimmerman*, 906 A.2d 776 (Del.2006), the Delaware Supreme Court held that "when an amended derivative complaint is filed, the existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry only as to the derivative claims in the amended complaint that are not already validly in litigation." *Id.* at 786. "[T]he term 'validly in litigation' means a proceeding that can or has survived a motion to dismiss." *Id.* at 779. The court stated:

> Three circumstances must exist to excuse a plaintiff from making demand under Rule 23.1 when a complaint is amended after a new board of directors is in place: first, the original complaint was well pleaded as a derivative action;

second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint.

*Id.* at 786. A complaint that is dismissed, including one that is dismissed without prejudice with leave to amend, is not validly in litigation for purposes of a Rule 23.1 demand inquiry. *Id.*

Under the standard set forth in *Braddock*, the claims in the First Amended Complaint filed by the plaintiffs are not validly in litigation. The First Amended Complaint was not "well pleaded as a derivative action" because the plaintiffs lacked standing to bring the claims asserted. Rule 23.1. provides that, in a derivative action, brought by

> [O]ne or more shareholders or members of a corporation or an unincorporated association ... to enforce a right that the corporation or association may properly assert but has failed to enforce ... [t]he complaint must be verified and must ... allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law.

Fed.R.Civ.P. 23.1(a)-(b)(1). The plaintiffs did not become NYFIX shareholders until 2005, and therefore they were not NYFIX shareholders at the time of the alleged backdating of stock option grants challenged in the First Amended Complaint. Thus, dismissal of the First Amended Complaint would be required under Fed.R.Civ.P. 23.1, and the claims contained

Carl Warden, Gene Stamos, Craig Shumate, and Mark Hahn, as well as claims asserting a violation of Section 14 of the Securities and Exchange Act of 1934 (the "Exchange Act")

and common law causes of action for rescission and breach of contract. The Second Amended Complaint added a claim for violation of Section 20(a) of the Exchange Act.

therein are not validly in litigation.[2]

■ The court finds unpersuasive the plaintiffs' arguments as to why the filing of the Second Amended Complaint did not trigger a new obligation to make demand upon the directors of NYFIX. First, the plaintiffs attempt to distinguish *Braddock,* a case in which the original complaint had already been dismissed without prejudice at the time the plaintiffs filed an amended complaint, from the instant case, in which the plaintiff's First Amended Complaint was never dismissed prior to the filing of the Second Amended Complaint. However, the court in *Braddock* explicitly stated that "for purposes of determining whether demand is required before filing an amended derivative complaint, the term 'validly in litigation' means a proceeding that can or has survived a motion to dismiss." *Id.* at 779. Thus, the filing of an amended complaint may trigger a new requirement to make demand if the earlier complaint could not have survived a motion to dismiss, even if it had not actually been dismissed. Because the plaintiffs' First Amended Complaint failed to satisfy the requirements of Rule 23.1, the claims contained therein are not validly in litigation within the meaning of *Braddock.*

■ The plaintiffs also argue that the First Amended Complaint could have survived a motion to dismiss because the question of standing in options backdating cases is one on which the law is unsettled. In support of this argument, the plaintiffs point to the following statement from the Delaware Court of Chancery:

Where, as is alleged here, the plaintiff purchased shares before some of the allegedly backdated options grants and long before any suggestion of backdating emerged relating to earlier grants, does Delaware law prohibit the litigation of all related claims in an action brought by such a plaintiff? Given the large number of option backdating cases pending around the country, and the likelihood that many, if not most, of them raise similar issues, it is important for the Delaware courts to decide this, and all related issues, authoritatively. The presence of complicated issues of unsettled Delaware law, then, strongly favors denial of the [defendant's motion to stay the case].

*Brandin v. Deason,* 941 A.2d 1020, 1025 (Del.Ch.2007). Although the court in *Brandin* noted that all issues related to the issue of standing in options backdating cases had not yet been resolved authoritatively, it did not purport to eliminate or undermine the contemporaneous ownership requirement in such cases. In *Brandin,* the court noted that "the options granted on July 23, 2002 constitute 40% of the total number of options challenged in this case, and the defendants do not dispute Brandin's stock ownership as of that date." *Brandin,* 941 A.2d at 1025, n. 18. Here, the plaintiffs did not own any NYFIX stock at any point during the period in which they allege the defendants improperly backdated stock option grants, and it is well-settled that plaintiffs do not have standing to bring claims based on backdated options grants which predated their stock ownership. *See Ryan v. Gif-*

2. Because the First Amended Complaint could not have survived a motion to dismiss based on the plaintiffs' lack of standing alone, the court need not decide whether the other grounds raised by NYFIX would justify dismissal. Also, because a new demand is required unless all three circumstances set forth

in *Braddock* are present, and the court has determined that the First Amended Complaint was not well-pleaded as a derivative action, the court need not decide whether the other two circumstances that must exist in order to excuse a plaintiff from making demand are present here.

*ford,* 918 A.2d 341, 359 (Del.Ch.2007) ("The law here is settled. Plaintiff may not assert claims arising before his ownership interest materialized on April 11, 2001."); *Desimone v. Barrows,* 924 A.2d 908, 925 (Del.Ch.2007) ("The fact that other wrongs may have later occurred does not afford a plaintiff standing to challenge earlier wrongs that pre-date his stock ownership, even though they may be similar or related.").

■ Because there were no claims validly in litigation at the time the Second Amended Complaint was filed, the proper board of directors for assessing the futility of demand with respect to the plaintiff's claims in the Second Amended Complaint is the board in place at the time that complaint was filed. "[T]he plaintiff must make a demand on the board of directors in place at the time the amended complaint is filed or demonstrate that demand is legally excused as to that board." *Braddock,* 906 A.2d at 786. Because the plaintiffs in this action did not make a demand on NYFIX's board of directors at the time they filed the Second Amended Complaint, the court must determine whether demand is excused as to that board.

### B. *Assessing the Futility of Demand*

■ As the Delaware Supreme Court has noted, "the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband,* 634 A.2d 927, 932 (Del.1993). The plaintiffs concede that they have not made a demand on the NYFIX board of directors before bringing this action, but they argue that making a demand would have been futile. The court finds this argument unpersuasive.

### 1. The Legal Standard

■ The plaintiffs argue that the court should apply the two-part test set forth by the Delaware Supreme Court in *Aronson v. Lewis,* 473 A.2d 805 (1984).[3] However, "a court should not apply the *Aronson* test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit." *Rales,* 634 A.2d at 934. This situation may arise "where a business decision was made by the board of a company, but a majority of the directors making the decision have been replaced." *Id.*

In this case, the court has determined that the proper board for assessing the futility of demand is the board that existed at the time the Second Amended Complaint was filed on June 27, 2007. The action challenged by the plaintiffs in the Second Amended Complaint is an allegedly false and misleading Form 10–K filed on June 30, 2005.[4] A majority of the di-

---

**3.** Under *Aronson,* the court examines "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson,* 473 A.2d at 814.

**4.** Although the Second Amended Complaint makes reference to other transactions, the claims were narrowed to include only claims

that the plaintiffs had standing to assert, i.e. claims where the plaintiffs owned stock at the time of the transaction. For this reason, the court disagrees with the plaintiffs' contention that it should apply the *Aronson* standard because a majority of the board of directors as of June 27, 2007 approved of either the backdating of stock option grants or the filing of false financial statements. The plaintiffs do not allege any transaction that took place after June 30, 2005 as a basis for the defen-

rectors on the board as of June 30, 2005 had been replaced by June 27, 2007, the date on which the plaintiffs filed the Second Amended Complaint. Therefore, the court applies the standard set forth in *Rales* for assessing the futility of demand.

 Under *Rales*, the court must examine "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations." *Rales*, 634 A.2d at 934.

> Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Id.* A director is considered interested "where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Id.* at 936. A director is also considered interested where he or she faces "a substantial likelihood" of personal liability for approving a challenged transaction. *Id.* A "mere threat" of personal liability is insufficient. *Id.* A director is

considered "independent" where "a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.* (quoting *Aronson*, 473 A.2d at 816). A director is not considered independent where he or she is so under the influence of others that his or her discretion "would be sterilized." *Id.*

### 2. Application of the *Rales* Standard

 On June 27, 2007, the date that the plaintiffs filed the Second Amended Complaint, NYFIX's Board of Directors consisted of the following nine members: George Deehan ("Deehan"), William Lynch ("Lynch"), William Jennings ("Jennings"), Thomas Wajnert ("Wajnert"), Lou Gorman ("Gorman"), Richard Roberts ("Roberts"), Howard Edelstein ("Edelstein"), Cary Davis ("Davis"), and William Janeway ("Janeway").[5] The plaintiffs do not contend that Edelstein, Davis, or Janeway would be unable to exercise independent and disinterested business judgment in responding to a demand. Edelstein, Davis, Janeway did not become members of the board until October 2006,[6] and they are not alleged to have participated in any wrongdoing.

The plaintiffs argue that the other six members of the board are not independent or disinterested because they either received backdated stock option grants, issued backdated stock option grants, or

dants' liability in the Second Amended Complaint, and they lack standing to base a claim on any transaction that took place prior to their ownership of NYFIX stock in 2005.

5. The dates that the directors have served on the board are as follows: George Deehan (August 2000–present), William Lynch (June 2000–present), William Jennings (July 2003–present), Thomas Wajnert (October 2004–present), Lou Gorman (September 2005–present), Richard Roberts (September 2005–pres-

ent), Howard Edelstein (October 2006–present), Cary Davis (October 2006–present), and William Janeway (October 2006–present). All members of the Board are outside directors except for Howard Edelstein, the Chief Executive Officer ("CEO") of NYFIX.

6. Edelstein, Davis, and Janeway joined NYFIX's Board upon completion of a $75 million sale of NYFIX stock to Warburg Pincus, a private equity firm, in 2006.

approved of false or misleading financial statements in connection with the backdating of stock option grants.[7] The plaintiffs allege that five of the directors—Deehan, Lynch, Jennings, Wajnert, and Gorman—served on NYFIX's audit committee and reviewed the financial statements in connection with the backdating of stock option grants.[8] The plaintiffs contend in their opposition to the instant motions that a sixth director—Roberts—worked as a partner in a law firm that provided legal services to NYFIX in 2004 and 2005 and signed off on a press release in June 2006 that failed to account for expenses associated with previously backdated stock option grants.[9] In addition, the plaintiffs allege that three of these directors—Deehan, Lynch and Jennings—received backdated stock option grants and approved of such grants during their service on NYFIX's compensation committee.[10]

The court concludes that the plaintiffs' allegations do not create a reasonable doubt that, at the time the Second Amended Complaint was filed, a majority of NYFIX's board of directors could have exercised independent and disinterested business judgment in responding to a demand. *See Rales,* 634 A.2d at 937. In the Second Amended Complaint, the plaintiffs allege that NYFIX filed a false and misleading Form 10–K on June 30, 2005, which understated the effect of the backdating of stock option grants. The plaintiffs do not plead violations of the securities laws for any allegedly false or misleading financial statements issued by NYFIX after June 30, 2005.

At the time plaintiffs allege NYFIX filed a false and misleading Form 10–K, i.e. on June 30, 2005, five directors—Gorman, Roberts, Edelstein, Davis, and Janeway—were not members of the board, and they are not named as defendants in this case. Because a majority of the directors as of June 27, 2007 did not become members of the board of directors until after the date of the challenged action, and they are not named as defendants, they do not face a substantial threat of personal liability if they were to pursue the claims in the Second Amended Complaint. Although the plaintiffs correctly note that Delaware courts have held that a director who approves or receives backdated stock option grants faces a substantial likelihood of lia-

---

**7.** In their opposition to the instant motions, the plaintiffs contend that the defendants improperly backdated stock option grants from 1993 to 2004. They also contend that, from 1995 to 2006, the defendants approved of false or misleading financial statements that misrepresented the exercise price of the stock options and understated the amount of the restatement of their financial statements. Specifically, the plaintiffs contend that NYFIX understated the amount of the restatement in a Form 10–K issued on June 30, 2005, an announcement on October 19, 2005, and a press release issued on June 29, 2006. The plaintiffs also contend that the error was not corrected until the filing of the March 7, 2007 Form 10–K, which stated that the estimates in June 2005 and June 2006 were inaccurate. The plaintiffs also note that the March 7, 2007 Form 10–K stated that, as of December 31, 2005, NYFIX's management did not maintain

effective internal control over financial reporting.

**8.** The dates that the directors have served on the Audit Committee are as follows: Deehan (2001–2004), Lynch (2002–2004), Jennings (2004–present), Wajnert (2004–present), and Gorman (2006–October 2007).

**9.** However, in the Second Amended Complaint, the plaintiffs allege that "NYFIX's June 29, 2006 Press Release expressly admits that based on the Company's documentation, NYFIX's prior practices regarding grant date and/or exercise prices may have been inappropriate...." (Second Am. Compl. ¶ 195).

**10.** The dates that the directors have served on the Compensation Committee are as follows: Deehan (2001–present), Lynch (2002–present), and Jennings (2004–2005).

bility, *see Ryan*, 918 A.2d at 355–56, and the plaintiffs' claim relates to filing a Form 10–K that allegedly understated the impact of the backdating, only three of the directors on the board at the time the Second Amended Complaint was filed are alleged to have approved or received the backdated stock option grants.

The plaintiffs also argue that members of the audit committee who approved of filing false financial and proxy statements face a substantial threat of personal liability. *See Ryan*, 918 A.2d at 356 n. 38. However, only four of the directors on the June 27, 2007 board served on the audit committee prior to the June 30, 2005 filing. A fifth director—Gorman—served on the audit committee from 2006 to October 2007. Although the plaintiffs now argue that the audit committee continued to approve false and misleading financial statements through 2006, the plaintiffs did not claim in the Second Amended Complaint that any financial statements issued after June 30, 2005 were false and misleading, and Gorman is not named as a defendant in that complaint. Along the same lines, the plaintiffs argue that six of the nine directors approved of false filings with the Securities and Exchange Commission ("SEC"), but the plaintiffs never allege in the Second Amended Complaint that any more than four of the members of the June 27, 2007 board approved of false or misleading filings with the SEC during the relevant time period.

The plaintiffs contend that two directors who are not named as defendants in this action—Gorman and Roberts—still face a substantial likelihood of personal liability because they are named as defendants in a "parallel" state court action. However, the plaintiffs' allegations in the Second Amended Complaint do not support the conclusion that Gorman or Roberts would face a substantial threat of personal liabili-

ty or criminal sanctions in any other action if they were to pursue the plaintiffs' claims here, nor is the parallel state court action even mentioned in the Second Amended Complaint. Thus, the allegations of the Second Amended Complaint do not establish that a majority of the board would face a substantial likelihood of personal liability.

The plaintiffs' allegations also do not establish that a majority of the board received any personal financial benefit from the transactions mentioned in the Second Amended Complaint. Only three of the directors on the board as of June 27, 2007 are alleged to have received backdated stock option grants, and it is unclear whether they personally profited from them. (*See* Second Am. Compl. ¶¶ 8, 197–98). In any event, it is clear that six of the nine directors received no personal financial benefit from any transaction that was not equally shared by shareholders.

Finally, the plaintiffs argue that they have created a reasonable doubt as to whether the defendants' backdating of stock option grants was the product of a valid exercise of business judgment. This argument, based on the second prong of the *Aronson* test, is inapposite. As noted above, the plaintiffs lack standing to assert claims related to the backdating of stock option grants. Moreover, a majority of the board of directors in existence at the time of the alleged backdating of stock option grants was replaced by the time the plaintiffs filed the Second Amended Complaint. Therefore, the business judgment rule has no application here. *See Rales*, 634 A.2d at 933.

Therefore, the court concludes that the plaintiffs have failed to assert particularized facts that would create a reasonable doubt that a majority of the board of directors would be independent and disinterested in evaluating a demand in this action.

Because the plaintiffs have failed to make demand or to establish that demand was excused on the ground of futility, the defendants' motions to dismiss are being granted.

## III. CONCLUSION

For the reasons set forth above, the Motion by Defendants George Deehan, William Lynch, and William Jennings to Dismiss the Corrected First Amended Consolidated Verified Shareholder Derivative Complaint (Doc. No. 81); Defendant Peter K. Hansen's Motion to Dismiss (Doc. No. 82); Thomas Wajnert's Omnibus Motion to Dismiss (Doc. No. 83); and Nominal Defendant NYFIX, Inc.'s Motion to Dismiss (Doc. No. 84) are hereby GRANTED.

The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.